**Jay M. FEDER, Plaintiff–Appellant,**

v.

**THE PAUL REVERE LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 97–2346.

United States Court of Appeals, Fourth Circuit.

Argued: April 8, 1998

Decided: Sept. 21, 2000

**ARGUED:** David Christopher Tobin, Tobin, O'Connor & Ewing, Washington, D.C., for Appellant. Mark Eugene Schmidtke, Ebenstein & Schmidtke Consultants, Valparaiso, Indiana, for Appellee. **ON BRIEF:** Alicia D. Mew, Tobin, O'Connor & Ewing, Washington, D.C., for Appellant. David E. Constine, III, Mays & Valentine, Richmond, Virginia, for Appellee.

Before WIDENER, MURNAGHAN,* and MICHAEL, Circuit Judges.

Vacated and remanded with instructions by published opinion. Judge WIDENER wrote the opinion, in which Judge MICHAEL joined.

WIDENER, Circuit Judge:

This case arises on appeal by plaintiff, Dr. Jay M. Feder, for reinstatement of disability benefits under a policy provided and administered by defendant, Paul Revere Life Insurance Co. (Paul Revere). Capital Area Permanente Medical Group, P.C. (Capital) employed Dr. Feder as a surgeon from 1989 through 1993, and Capital's Group Long Term Disability Policy (the Capital Plan) covered Dr. Feder. In October 1993, Dr. Feder submitted a claim to Paul Revere for disability benefits under the Capital Plan because he developed a disabling mental illness. Paul Revere determined that Dr. Feder was totally disabled as defined by the Capital Plan and began making monthly disability payments to Dr. Feder in February 1994. Paul Revere continued to make those monthly payments until June 1996, when Paul Revere notified Dr. Feder of its decision to terminate his disability payments because he no longer qualified under the Capital Plan.

* Judge Murnaghan heard oral argument in this case but died prior to the time the decision was filed. The decision is filed by a quorum of the panel. 28 U.S.C. § 46(d).

Dr. Feder filed a complaint against Paul Revere in the district court for improper termination of benefits in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* The parties then filed cross motions for summary judgment, and the district court granted Paul Revere's motion on the grounds that Paul Revere did not abuse its discretion in denying Dr. Feder benefits. For the reasons stated herein, we hold that the district court erred in applying an abuse of discretion standard of judicial review. Therefore, we vacate the district court's decision and remand this case for further consideration consistent with this opinion.

Capital employed Dr. Feder as a general surgeon from 1989 through 1993. In the summer or early fall of 1993, Capital terminated Dr. Feder, and shortly thereafter Dr. Feder submitted a claim for total disability benefits as a consequence of having developed a disabling mental illness. As a Capital employee, Dr. Feder was covered by the Capital Plan, which Paul Revere provided and administered.

The Capital Plan's terms stated that a physician was eligible for benefits if he became totally disabled and unable to perform the required duties of his occupation. The Capital Plan defined the criteria for classifying a physician as totally disabled:

Totally disabled from the employee's own occupation or total disability from the employee's own occupation means:

1. For doctors,
 a. that because of injury or sickness the employee cannot perform the important duties of his specialty in the practice of medicine, and
 b. the employee is under the regular care of a doctor; and
 c. the employee does not work at all.

The Capital Plan contained under long-term disability benefits a provision for psychiatric disorders and limited the payment of disability benefits for such a condition to a maximum of five years. This provision is mentioned only in passing, for Paul Revere stopped the payments well before five years after the 1993 dates involved.

After reviewing Dr. Feder's claim for benefits and an initial report diagnosing Dr. Feder's mental condition by Dr. Feder's attending psychiatrist, Dr. Charles Ragan, Paul Revere's staff concluded that Dr. Feder was totally disabled as defined by the Capital Plan. Dr. Feder's treating physicians identified the mental illnesses as Dysthymia and Mixed Personality Disorder. Paul Revere began to make monthly disability payments in February 1994, and Dr. Feder received medication and psychotherapy for his illness. His treating physicians, first Dr. Ragan and then Dr. Martin Allen, submitted progress reports to Paul Revere, concluding that Dr. Feder's psychiatric condition made his performance of his surgical duties impossible. Several months later, Dr. Feder entered an unpaid residency program to retrain himself as a radiologist, a specialty that he and his physicians believed was more compatible with his psychiatric condition.

In May 1995, a psychiatric specialist in Paul Revere's medical department, Dr. Cheryl Richardson Eder, reviewed Dr. Feder's record and concluded that he continued to be totally disabled from performing the duties required of a surgeon. Then, in January 1996, Paul Revere acquired a report from Dr. Neil Blumberg, a psychiatrist retained by Dr. Feder's private disability insurer. Dr. Blumberg's report, which was dated August 24, 1994 and prepared for Dr. Feder's private insurer, concluded that although Dr. Feder did suffer from a personality disorder, which was "rampant among the surgeons with whom he was familiar," Dr. Feder was not disabled in his ability to practice as a surgeon. Dr. Blumberg was of opinion that it would "ideally suit" Dr. Feder to be "[w]orking, for example, in an academic environment frequently populated by professors with obsessively perfectionistic and narcissistic features." Paul Re-

vere then referred Dr. Feder's entire file, including Dr. Blumberg's report and updated reports by Drs. Ragan and Allen, to a consulting psychiatrist, Dr. Stephen Greenberg, for a new evaluation. Dr. Feder also submitted independent evaluations, which confirmed his disabled condition, prepared by Dr. Eroll Segall for consideration by Dr. Greenberg. Upon reviewing all of the relevant medical reports and without personally examining Dr. Feder, Dr. Greenberg concluded that Dr. Feder was not totally disabled from practicing as a surgeon. Accordingly, Paul Revere terminated Dr. Feder's disability payments in June 1996.

Dr. Feder appealed the initial denial of benefits to Paul Revere, and in September 1996, Paul Revere affirmed its denial. Dr. Feder then filed his complaint in this case in the district court. That court granted Paul Revere's motion for summary judgment because Paul Revere did not abuse its discretion in denying disability payments to Dr. Feder. Dr. Feder appeals, challenging the district court's application of the abuse of discretion standard of review to its denial of disability benefits and requesting that this Court remand the case for consideration under the proper standard of review.

 This court has established a framework for reviewing the denial of disability benefits under ERISA plans. We review the district court's decision *de novo*. *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.*, 32 F.3d 120, 123 (4th Cir. 1994); *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir.1997). In cases in which a court reviews an ERISA plan administrator's decision to deny benefits, a reviewing court must initially decide *de novo* whether the plan's language grants the administrator discretion to determine the claimant's eligibility for benefits, and if so, whether the administrator acted within the scope of that discretion. See *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 89 (4th Cir.1996). If the reviewing court determines that the language of the plan

confers discretion on the administrator to determine eligibility or to construe terms of the plan, then a court reviews the decision to deny benefits for abuse of discretion. See *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Ellis*, 126 F.3d at 232; *Haley*, 77 F.3d at 89. This deferential standard of review requires that a reviewing court not disturb an administrator's decision if it is reasonable, even if this Court would have reached a different conclusion. See *Bruch*, 489 U.S. at 115, 109 S.Ct. 948; *Haley*, 77 F.3d at 89.

 Initially we must determine *de novo* whether the Capital Plan's terms confer discretionary authority on Paul Revere to make eligibility decisions. See *Haley*, 77 F.3d at 89; *Ellis*, 126 F.3d at 232. Because ERISA plans are contractual documents, although regulated, their interpretation is "governed by established principles of contract and trust law." *Haley*, 77 F.3d at 88; see *Bruch*, 489 U.S. at 109–11, 109 S.Ct. 948. As with other contractual provisions, courts construe the plan's terms without deferring to either party's interpretation. *Bruch*, 489 U.S. at 112, 109 S.Ct. 948; see *Wheeler v. Dynamic Eng'g Inc.*, 62 F.3d 634, 638 (4th Cir.1995) (stating that ERISA plans are interpreted "under ordinary principles of contract law").

 This Court does not require specific phrases to trigger a particular standard of review. Rather, we examine the terms of the plan to determine if it vests in its administrators discretion either to settle disputed eligibility questions or construe doubtful provisions of the Plan. See *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1187 (4th Cir.1989). We will find discretionary authority in the administrator if the plan's language expressly creates discretionary authority. See *Doe v. Group Hosp. & Med. Serv.*, 3 F.3d 80, 85 (4th Cir.1993) (applying abuse of discretion standard of review when the plan at issue gave "full power and discretionary authori-

ty to control and manage the operation and administration of the Contract ... [and] all powers necessary [in] ... determining all questions relating to Employee ... eligibility and benefits"); *Ellis,* 126 F.3d at 230 (finding discretionary authority when the plan vests a fiduciary with "discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to plan benefits in accordance with the terms of the plan").

We have not, however, always required an explicit grant of discretionary authority. Rather, we have recognized that a plan's terms can create discretion by implication. In *Boyd v. Trustees of the United Mine Workers Health and Retirement Funds,* 873 F.2d 57, 59 (4th Cir. 1989), we found discretionary authority because the plan granted the administrators the "full and final determination as to all issues concerning eligibility for benefits" and "authorized [them] to promulgate rules and regulations to implement this plan." See *Lockhart v. United Mine Workers of America 1974 Pension Trust,* 5 F.3d 74 (4th Cir.1993). Further, in *Bernstein v. CapitalCare, Inc.,* 70 F.3d 783, 788 (4th Cir.1995), we found that the agreement at issue created discretion in the administrator because the terms stated that the administrator "may adopt reasonable policies, procedures, rules and interpretations to promote the orderly and efficient administration of this agreement" and that benefits will be paid "only if [the administrator] determines" that certain conditions are met. See also *de Nobel,* 885 F.2d at 1187 (finding discretion when the terms of the plan empower the administrator to "determine all benefits and resolve all questions pertaining to the administration, interpretation and application of the Plan provisions"). Therefore, if the terms of a plan indicate a clear intention to delegate final authority to determine eligibility to the plan administrator, then this Court will recognize discretionary authority by implication.

■ Paul Revere contends, Br. p. 24–25, that the Capital Plan either expressly or impliedly grants it final authority to resolve eligibility disputes and for that conclusion relies on several provisions in the Capital Plan. First is the right to require written proof of Dr. Feder's disability. The Capital Plan states that "written notice of a claim for disability must be given to us [Paul Revere]." Next in the provisions is the Capital Plan which requires that "written proof should establish facts about the claim such as occurrence, nature and extent of the disability, injury or sickness or the loss involved." Third, the Capital Plan reserves for Paul Revere the "right to require additional written proof to verify the continuance of any disability," and fourth, the right to "request this additional proof as often as we feel is necessary, within reason."

The third and fourth defenses just above mentioned were considered in terms in *Haley, supra,* Part II, 77 F.3d at 87. In that case, we held against Paul Revere in its claim of discretion accorded to the administrator, and we adhere to our holding in *Haley* as to those two items without further discussion.

■ The first item mentioned, the requirement of written notice of a claim for disability, fares no better on its face. There is nothing discretionary in the Capital Plan or otherwise about a requirement to submit a disability claim in writing. Indeed, if such language could be construed to award administrative discretion, claimants would be provided less protection than they enjoyed before ERISA was enacted, a construction not favored. See *Bruch,* 489 US. at 114, 109 S.Ct. 948.

■ With reference to the second requirement, that the written proof should establish facts about the claim such as occurrence, nature and extent of the disability, etc, the Capital Plan contains no discretionary language with respect to that requirement. As is the requirement of written notice of a claim of disability, the requirement of a statement of facts to

support the claim is simple, straight-forward and unqualified, leaving nothing to be construed or subject to administrative discretion.

Finally, Paul Revere urges us to follow the decisions, deciding in favor of administrative discretion, in *Snow v. Standard Ins. Co.*, 87 F.3d 327, 330 (9th Cir.1996) (holding discretionary that "what it [the administrator] considers to be satisfactory written proof"); *Patterson v. Caterpillar, Inc.*, 70 F.3d 503, 505 (7th Cir.1995) (holding discretionary "such notice and such due proof as shall be from time to time required"); and *Donato v. Metropolitan Life Ins. Co.*, 19 F.3d 375, 379 (7th Cir. 1994) (holding discretionary "[a]ll proof must be satisfactory to us."). With respect to those cases, it is sufficient to say that they are not necessarily, or even probably, contrary to our holding here, for the Capital Plan at issue in this case contains no such discretionary language.

In sum, we are of opinion that the Capital Plan in this case does not require a deferential standard of review because Paul Revere was not exercising discretion in ascertaining eligibility for benefits. In the Capital Plan, Paul Revere does not have ". . . the power to construe uncertain terms or that [its] eligibility determinations are to be given deference." *Bruch,* 489 U.S. at 111, 109 S.Ct. 948. That being true, we hold that the "denial of benefits challenged . . . is to be reviewed under a *de novo* standard." *Bruch,* 489 U.S. at 115, 109 S.Ct. 948.

The judgment of the district court must be vacated and the case remanded for further proceedings consistent with this opinion.

*VACATED AND REMANDED WITH INSTRUCTIONS.*[1]

---

1. We have considered that Paul Revere was the insurer as well as the administrator of the Capital Plan, but have arrived at our decision without considering any edge that fact may have given the claimant. See *Bruch,* 489 U.S. at 115, 109 S.Ct. 948.