Nancy Ross **BARRON**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA**

No. Civ.A. WMN–99–3708.

United States District Court,
D. Maryland.

Dec. 14, 2000.

Robert M. McCaig, Seidel, Baker & Tilghman, Salisbury, MD, for Nancy Ross Barron.

John Snowden Stanley, Jr., Semmes, Bowen & Semmes, Baltimore, MD, for UNUM Life Insurance Co. of America

### *MEMORANDUM*

NICKERSON, District Judge.

Before the Court are Plaintiff's Motion for Summary Judgment (Paper No. 19) and Defendant's Cross–Motion for Summary Judgment (Paper No. 21). Both motions have been fully briefed and are ripe for decision. Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Plaintiff's motion will be denied and Defendant's motion will be granted.

## I. BACKGROUND

During 1974, while employed by Advanced Computer Techniques ("ACT"), Plaintiff was diagnosed with Multiple Sclerosis ("MS"). Due to her MS symptoms, Plaintiff subsequently filed for, and was awarded, long-term disability benefits under ACT's plan, which was administered by Defendant. Plaintiff received monthly payments until 1991, at which time Plaintiff's request for a change to annual payments was granted by Defendant. In May, 1993, the parties negotiated a lump-sum payment, in the amount of $36,000; in exchange for Plaintiff signing a Settlement Release ("Release"), under which Plaintiff "forever relinquish[ed] any and all claims [she has] or may have against UNUM." [1]

In September, 1994, Plaintiff was able to return to work, joining Comcast Corporation ("Comcast") as a full-time employee on September 15, 1997. At that time she enrolled in Comcast's disability plan, which was also administered by Defendant. In February 1998, Plaintiff's MS symptoms returned and Plaintiff became unable to work. In March, 1998, Plaintiff filed for, and was awarded, short-term disability benefits under the Comcast Plan. As Plaintiff's short-term disability benefits were nearing exhaustion, Defendant transferred the claim to one for long-term disability benefits. This request was denied on June 16, 1998, on the basis of the previously signed Release. [2]

Plaintiff brought suit challenging the denial of benefits on the basis of the May, 1993 Release, which, according to Plaintiff, only applied to benefits under the ACT Plan. In her suit, Plaintiff seeks: (1) a declaratory judgment stating that the Release does not bar her current claim; (2) remand to Defendant for processing of Plaintiff's claim in accordance with the usual underwriting standards; and (3) an award of reasonable attorney's fees.

## II. LEGAL STANDARD

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party is entitled to have "all reasonable inferences ... drawn in its respective favor." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1129 (4th Cir.1987). Only disputes over facts that might "affect the outcome of the

---

1. The pertinent portions of the Settlement Release read:

   2. Upon execution by me of this Settlement and Release, UNUM will pay me the sum of $36,000.00 in addition to the benefits provided to date, if any, as full, final, and complete satisfaction and settlement of its past, present, and future liability to me under Policy Number 012543.

   3. I understand that by signing this Settlement and Release, I am forever relinquishing any and all claims I have or may have against UNUM, including, but not limited to, any claim for additional benefits from UNUM under Policy Number 012543 and that this is a legally binding document. I also understand and acknowledge that I have the right to have this Settlement and Release reviewed by an attorney and/or other personal, financial or medical advisor(s) prior to signing this Settlement and Release.

2. Coverage may also be barred under the pre-existing condition exclusion of the Plan. Defendant, however, never made this determination because of its view that Plaintiff was not eligible for any benefits by the terms of the May, 1993, Release.

suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

## III. DISCUSSION

■ The Fourth Circuit framework for reviewing a denial of disability benefits under a Plan covered by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.,* begins with the *de novo* determination, by the court, of whether the language of the plan grants the administrator discretion to determine a claimant's eligibility for benefits. *See Feder v. The Paul Revere Life Ins. Co.,* 228 F.3d 518, 522 (4th Cir.2000). If no discretion is granted, then the Court must review the disability decision *de novo.* If, however, the language of the plan confers discretion, then the reviewing court will overturn the decision only for an "abuse of discretion" by the claims administrator. *See id.* (citing *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). This deferential standard of review requires that a reviewing court not disturb an administrator's decision if it is reasonable, even if the court would have reached a different conclusion.

As an additional safeguard, where a plan gives discretion to an administrator who is "operating under a conflict of interest,[3] that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Elliott v. Sara Lee Corp.,* 190 F.3d 601, 605 (4th Cir.1999) (quoting *Bruch,* 489 U.S. at 115, 109 S.Ct. 948). This modified standard applies on a case-by-case basis, deviating from the usual abuse of discretion standard only to the extent necessary to counteract any influence unduly resulting from the conflict. *Ellis v. Metropolitan Life Ins. Co.,* 126 F.3d 228, 233 (4th Cir.1997).

In this case, there is no dispute that the Comcast Plan gives Defendant, as administrator, discretionary authority to determine eligibility for benefits, including issues of coverage, under the policy. *See* Comcast Policy CC.FP–1 (stating that "when making a benefit determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits[4] and to interpret the terms and provision of the policy"). Thus, the Court will review Defendant's decision for an abuse of discretion and will overturn that decision only if it is found to be unreasonable. To determine the reasonableness of Defendant's decision, the Court must determine whether a reasonable person in the position of the parties would reach the same result.

■ Releases are construed according to established principles of contract interpretation, *Bernstein v. Kapneck,* 290 Md. 452, 458, 430 A.2d 602 (1981), which, in the first instance, is a question of law for the court to resolve. *Lerner Corp. v. Three Winthrop Properties, Inc.,* 124 Md.App. 679, 684, 723 A.2d 560 (1999). The court, in interpreting a contract, "places itself in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them and to judge the meaning of the words and the correct application of the language to the things described." *Canaras v. Lift Truck Services, Inc.,* 272 Md. 337, 352, 322 A.2d 866 (1974). Wherever possible, the plain and ordinary meaning should be given to the terms of the agreement. *Bernstein,* 290 Md. at 459, 430 A.2d 602. Additional-

---

**3.** Plaintiff is asserting a conflict of interest in this instance because Defendant's profit motive conflicts with the fiduciary duty of the administrator to act in the best interest of the plan beneficiary.

**4.** Plaintiff claims "eligibility" is limited to eligibility under the plan provisions. The Court disagrees and reads "eligibility" to include any prior bar to coverage under the plan. It defies common sense to require the payment of benefits when the right to seek those benefits has previously been "sold" as part of a negotiated and agreed to bargain.

ly, an interpretation which gives reasonable meaning to all contract provisions will be preferred to one which renders a portion of the writing useless or inexplicable. *Orkin v. Jacobson*, 274 Md. 124, 130, 332 A.2d 901 (1975). In all cases, it is improper for the court to rewrite the terms of a contract simply to avoid a hardship to one party. *See Canaras*, 272 Md. at 350, 322 A.2d 866.

Here, the Release clearly states that Plaintiff is "forever relinquishing any and all claims [she has] or may have against UNUM, including, but not limited to, any claim for additional benefits from UNUM under Policy Number 012543." The plain and unambiguous terms of the agreement state that Plaintiff is relinquishing present and future claims, both generally and under the existing ACT policy. To read the Release as limited to only claims arising under the existing ACT policy would render the words "forever relinquishing any and all claims" and "including, but not limited to" superfluous. Such a reading is improper given that a contract is to be read to give meaning to all provisions and terms.

The Court also relies on the circumstances and situation of the parties at the time the Release was entered to support the contention that the parties clearly intended that Defendant would be released, at the very least, from any and all future long-term disability claims relating to Plaintiff's MS. Plaintiff attempts to cast the Release as overbroad because, under a literal reading, Plaintiff would not be entitled to collect funds from Defendant under any type of circumstance.[5] The Court would agree with Plaintiff that such a

reading might be unreasonable. However, the Court is not restricted to such a literal reading. Instead, the Court is permitted to place itself in the same position as the parties at the time the Release was entered, so as to judge the meaning of the words in light of the circumstances as they existed at that time. *See Canaras*, 272 Md. at 352, 322 A.2d 866. In so doing, it is clear that it would be inherently unreasonable to contemplate that Defendant would agree to a lump sum payment only to have to resume payments on an identical type of claim less than five years later.

Conversely, persons in Plaintiff's position, for a variety of reasons, will often negotiate for and receive a lump sum payment in exchange for releasing the paying party from any type of future liability. Irregardless of Plaintiff's motivations, it is undisputed that she participated in the negotiations,[6] she was advised of her right to seek counsel, and she signed the Release as written. It is also undisputed that Plaintiff benefitted from her bargain by having a lump sum of money at her disposal and, more importantly, by having received disability payments for a period of time when she was not disabled and was working.[7]

■ Given that the Release was the result of a bargained for exchange; that Plaintiff clearly benefitted from receipt of a lump sum payment; that the terms of the Release plainly state the Plaintiff relinquishes any and all present and future claims against Defendant; and, that a reasonable person, in the same circumstances, would clearly understand the Release to relieve Defendant of any and all present

---

5. Plaintiff posits the example of an auto insurance claim resulting from a car accident in which she is injured by someone insured by Defendant. In such a case, according to Plaintiff, under the terms of the Release, she would be barred from receiving benefits.

6. Defendant originally offered a lump-sum payment of $30,000. This amount was increased to $36,000 after negotiations between the parties.

7. The $36,000 lump-sum payment is the equivalent to approximately five years of monthly payments. The lump-sum payment was received in May, 1993, and Plaintiff began working on a full-time basis in September, 1994. Thus, by virtue of her receiving a lump-sum payment, Plaintiff received disability benefits for nearly four years when she was not, in fact, disabled.

and future claims for, at the very least, long-term disability payments due to Plaintiff's MS, the Court finds that Defendant did not abuse its discretion in denying Plaintiff's claim for long-term disability on the basis of the May, 1993, Release.

The only remaining issue is Plaintiff's request for attorney's fees. ERISA only authorizes an award of attorney's fees to a prevailing Plaintiff. Here, no such award is appropriate.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment will be denied and Defendant's Cross–Motion for Summary Judgment will be granted. A separate order will issue.

### ORDER

Pursuant to the foregoing memorandum, and for the reasons stated therein, IT IS this 14th day of December 2000, by the United States District Court for the District of Maryland, hereby ORDERED:

1. That Plaintiff's Motion for Summary Judgment (Paper No. 19) is hereby DENIED;

2. That Defendant's Cross–Motion for Summary Judgment (Paper No. 21) is hereby GRANTED;

3. That this case is hereby CLOSED;

4. That any and all prior rulings made by this Court disposing of any claims against any parties are incorporated by reference herein and this order shall be deemed to be a final judgment within the meaning of Fed.R.Civ.P. 58; and

5. That the Clerk of the Court shall mail or transmit copies of the foregoing memorandum and this order to all counsel of record.