335 F.Supp.2d 590 (2004)
David S. COLIN, Hal Craig Hartsell, Jr., Arthur C. Prewitt, Plaintiffs,
v.
MARCONI COMMERCE SYSTEMS EMPLOYEES' RETIREMENT PLAN, Retirement Committee for the Marconi USA Employees' Retirement Plan, Marconi Commerce Systems Employees Retirement Plan Committee, Gilbarco, Inc., Danaher Corporation, Danaher Corporation and Subsidiaries Pension Plan, Defendants.
No. 1:03 CV 00079.
United States District Court, M.D. North Carolina.
September 1, 2004.
*591 *592 *593 *594 Kenneth Miles Johnson, Tuggle Duggins & Meschan, P.A., Greensboro, NC, for Plaintiffs.
G. Wayne Hillis, Jr., Peter M. Varney, Parker Hudson Rainer & Dobbs LLP, Atlanta, GA, Alan W. Duncan, Allison O. Vanlaningham, Smith Moore, L.L.P., Greensboro, NC, Robert B. Cordle, Rodney E. Alexander, Mayer Brown Rowe & Maw, Charlotte, NC, for Defendants.

MEMORANDUM OPINION and ORDER
OSTEEN, District Judge.
Plaintiffs David S. Colin, Arthur C. Prewitt, and Hal Craig Hartsell, Jr. bring this action against Defendants Marconi Commerce Systems Employees' Retirement Plan (the "Marconi Commerce Plan"), Marconi Commerce Systems Employees' Retirement Plan Committee ("Marconi Commerce Committee"), Danaher Corporation and Subsidiaries Pension Plan (the "Danaher Plan"), Danaher Corporation ("Danaher"), and Gilbarco, Inc. ("Gilbarco") (collectively, the "Gilbarco Defendants"). Plaintiffs also commenced this action against Marconi USA Employees' Retirement Plan (the "Marconi USA Plan") and Retirement Committee for the Marconi USA Employees' Retirement Plan ("Marconi USA Committee"), but have since voluntarily dismissed the Marconi USA Plan as a defendant with the agreement of all parties. Plaintiffs claim that Defendants committed numerous violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"), including wrongful denial or reduction of benefits, failure to meet notice requirements, and breach of fiduciary duty.
I. BACKGROUND
The following facts are presented in the light most favorable to Plaintiffs.[1]
Plaintiffs are each former employees of Gilbarco or Marconi Systems, Inc., a successor of Gilbarco. Originally, Plaintiffs' ERISA benefits were governed by the terms of the Gilbarco, Inc. Retirement Income Plan for Salaried Employees or the G.E.C.-U.S.A. Employees' Retirement Plan. Both plans were predecessors of the Marconi USA Plan administered by Marconi USA Committee. Plaintiffs were each participants in the Marconi USA Plan, which subsequently spun off[2] to the Marconi Commerce Plan, administered by Marconi Commerce Committee; the Marconi Commerce Plan was in turn spun off to the Danaher Plan, administered by Danaher. Due to the number of spin offs and proper names associated with all of the plans at issue, as well as a general lack *595 of conclusive evidence as to which plan was in force at a given time, the court will refer generically to "the plan" when referencing the plan under which Plaintiffs' benefits were governed at the time in question.
Following the termination of their employment, Plaintiffs each made claims for benefits that were denied based on the terms of the plan. Plaintiffs appealed these determinations and sought reinterpretation of the plan, but were again denied benefits. Plaintiffs each assert that these claims were wrongfully denied in violation § 204 of ERISA.
Plaintiffs also allege they have not been provided certain documents Defendants are obligated to provide under ERISA notice requirements. Specifically, Plaintiffs claim they have not been given plan descriptions, summaries of material modifications resulting from the plan spin offs, or copies of various plan restatements and amendments in violation of § 104 of ERISA. Plaintiffs further assert Defendants failed to maintain adequate records as required by § 209.
In addition to those claims, Plaintiffs Colin and Prewitt contend that Gilbarco employees showed them certain supplemental documents and represented that these documents were part of the plan. Colin and Prewitt both made claims for benefits based on the terms of these supplemental documents; Defendants denied these benefits on the basis that the documents were not part of the plan. Colin and Prewitt allege that the documents are part of the plan, and that Defendants' denial of benefits due thereunder violated § 204 of ERISA. In the alternative, Colin and Prewitt allege that, if the documents were not part of the plan, the Gilbarco employees' misrepresentations constitute a breach of Defendants' fiduciary duties imposed by ERISA.
Finally, Colin alleges that a Gilbarco employee led him to believe that he would not vest under the plan until age 65. Colin actually vested at age 62, but did not make any claim until age 65 having relied on the misrepresentation. Colin claims the misrepresentation also constitutes a breach of Defendants' fiduciary duties imposed by ERISA.
Having exhausted their administrative appeals, Plaintiffs filed this lawsuit. Now before the court are the following motions, each directed at Plaintiffs' Second Amended Complaint: the Gilbarco Defendants' motion to dismiss Count VI; Marconi USA Committee's motion to dismiss Counts I, II, IV, V, and VI;[3] the Gilbarco Defendants' *596 motion for judgment on the pleadings as to Counts I, II, IV, V, and VI; Marconi USA Committee's motion for summary judgment as to Count III;[4] and the Gilbarco Defendants' motion for summary judgment as to Count III.
II. DEFENDANTS' MOTIONS TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS I, II, IV, V, AND VI OF PLAINTIFFS' SECOND AMENDED COMPLAINT
A. Standards of Review
A defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of pleadings, but does not seek to resolve disputes surrounding the facts. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992). A court must determine only if the challenged pleading fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A pleading "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The pleading must be "liberally construed" in the light most favorable to the non-moving party and allegations made therein are taken as true. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969).
These same standards also dictate the court's review of a motion for judgment on the pleadings made pursuant to Federal Rule of Civil Procedure 12(c). See, e.g., Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir.1999). The court may also look to documents extraneous to the complaint without converting the motion into one for summary judgment. Specifically, exhibits "integral to and explicitly relied on in the complaint" may be reviewed, provided their authenticity is not in question. Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir.1999) (discussing standard in context of a Rule 12(b)(6) motion); see also Eagle Nation, Inc. v. Market Force, Inc., 180 F.Supp.2d 752, 754 (E.D.N.C.2001). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir.2001).
B. Counts I and II  Claims for Wrongfully Denied Benefits
Plaintiffs allege in Counts I and II of their Second Amended Complaint that Defendants violated § 204 of ERISA by wrongfully denying or reducing benefits due under the plan. In conjunction with these claims, Plaintiffs seek payment of the benefits they allege were provided under the plan, a remedy pursued via § 502(a)(1).
1. Marconi USA Committee's Motion to Dismiss Counts I and II
Marconi USA Committee argues that it cannot be held liable for Plaintiffs' claims for benefits because, pursuant to a 2001 spin-off agreement, Marconi USA Committee released all control and discretion it *597 held over Plaintiffs' plan, with Marconi Commerce Committee assuming all related liabilities. Marconi USA Committee asserts that Plaintiffs lack standing to pursue benefits from it because, as a former plan administrator no longer in control of the plan, Marconi USA Committee lacks any authority to provide the remedy Plaintiffs seek.
Marconi USA Committee is correct in its assertion that, following the spin-off agreement in 2001, it relinquished all discretion and control over the plan in which Plaintiffs participate.[5] The Second Amended Complaint contains no allegations to the contrary. Plaintiffs, however, argue that Marconi USA Committee is a proper party to these claims because it once exercised control over the plan and acted as plan administrator when Plaintiffs' claims for benefits were denied.[6]
The cases Plaintiffs cite do not support their argument; rather, they stand only for the proposition that parties exercising a sufficient degree of control over an ERISA plan may be sued for benefits. See, e.g., Daniel v. Eaton Corp., 839 F.2d 263, 266 (6th Cir.1988); Marcum v. Zimmer, 887 F.Supp. 891, 894 (S.D.W.Va.1995); Beegan v. Associated Press, 43 F.Supp.2d 70, 73-74 (D.Me.1999); International Union v. Auto Glass Employees Fed. Credit Union, 858 F.Supp. 711, 722-23 (M.D.Tenn.1994). These cases do not address the situation in which a former administrator, currently lacking any control or ability to compel payment under the plan, is sued for benefits. Plaintiffs cite only one case in which a former plan administrator was subject to liability for denial of ERISA benefits. See Kinek v. Paramount Communications, Inc., 22 F.3d 503, 504 (2d Cir.1994). Kinek is inapplicable here because the basis of liability was the defendant's failure to fully fund vested benefits as agreed to in its spin-off arrangement with a successor plan. Id. at 512. In this case, there is no allegation that Marconi USA Committee underfunded the portion of its plan that was spun off to the Marconi Commerce Plan and, likewise, no allegation that Marconi USA Committee violated its spin-off agreement with its successor, Marconi Commerce Committee.
More on point are the numerous decisions stating that a party which does not have any control or discretion over a plan is not a proper party to an action for ERISA benefits. See, e.g., Hall v. Lhaco, Inc., 140 F.3d 1190, 1196-97 (8th Cir.1998); Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226 (3d Cir.1994); Daniel, 839 F.2d at 266; Little v. UNUMProvident Corp., 196 F.Supp.2d 659, 672 (S.D.Ohio 2002) (holding that "the proper party defendant in an ERISA action concerning benefits is the party that is shown to control administration of the plan"); Marcum, 887 F.Supp. at 894 (dismissing defendant who had not been shown to exercise any control over the plan, but declining to dismiss two other defendants who "appear to have substantial ties to the administration *598 of the Plan"). In Hall, the Eighth Circuit held that a former employer, which had also formerly provided administrative services to the ERISA plan in question, could not provide redress on a claim for benefits since it no longer had any control over the plan. 140 F.3d at 1196 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136-37, 119 L.Ed.2d 351 (1992)). Although this case involves a former plan administrator, rather than a former employer that provided some administrative services, the same reasoning applies. Here, even if Plaintiffs are rightfully owed benefits, Marconi USA Committee lacks any authority to provide them. See id. (finding the former employer "is in no position, where it is no longer associated with the Plan, to pay out benefits to [plaintiff].... Only the Plan and the current plan administrator can pay out benefits to [plaintiff]."); accord Thomas v. Aetna Life Ins. Co., No. A.3:99-CV-1163-M, 2000 WL 1239129, at *2 (N.D.Tex. Aug.31, 2000), aff'd sub nom. Thomas v. Aetna Ins. Agency TX, No. 00-11118, 2001 WL 1075886, 273 F.3d 1101 (5th Cir. Aug.23, 2001) (unpublished).
Since Marconi USA Committee currently has no control or discretion regarding Plaintiffs' benefits, it cannot provide redress of Plaintiffs' claims under § 502(a)(1). See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81, 120 S.Ct. 693, 704, 145 L.Ed.2d 610 (2000) (holding that, for Article III standing, plaintiff must demonstrate that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" (citing Lujan, 504 U.S. at 560-61, 112 S.Ct. at 2136)). Accordingly, Marconi USA Committee's motion to dismiss Counts I and II of Plaintiffs' Second Amended Complaint will be granted.
2. Gilbarco Defendants' Motion for Judgment on the Pleadings as to Counts I and II
Plaintiffs allege that the Gilbarco Defendants[7] incorrectly interpreted the terms of the plan to deny or reduce benefits Plaintiffs accrued, and advance three distinct theories in support of their claims. First, all Plaintiffs assert that the Gilbarco Defendants wrongfully declined to grant them benefits for the period prior to July 1, 1984, when participant contributions were required. Second, Plaintiffs Colin and Prewitt allege that they were wrongfully denied double benefit credit in each year of their overseas employment. Finally, Plaintiff Colin alleges that the Gilbarco Defendants failed to correctly calculate his years of "credited service" and "basic compensation" as those terms are defined by the plan, causing his benefits to be reduced.
The Gilbarco Defendants argue that, so long as their denial of benefits was based on a reasonable interpretation of the plan, this court may not find in favor of Plaintiffs on any of the three theories advanced. It is well-settled that "[a] federal court's ability to review a discretionary decision of the administrator of an employee benefits plan is significantly limited." Elliott v. Sara Lee Corp., 190 F.3d 601, 605 (4th Cir.1999). "In cases where the benefit plan grants the administrator or fiduciary discretionary authority to determine eligibility or to construe the terms of the plan, the denial decision must be reviewed for abuse of discretion." Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 232 (4th Cir.1997) (citing Firestone Tire & *599 Rubber Co. v. Bruch, 489 U.S. 101, 111, 115, 109 S.Ct. 948, 954-55, 956-57, 103 L.Ed.2d 80 (1989)); accord Bedrick v. Travelers Ins. Co., 93 F.3d 149, 152 (4th Cir.1996); Bernstein v. CapitalCare, Inc., 70 F.3d 783, 787 (4th Cir.1995). The parties do not dispute that the plan in question grants the administrator discretionary authority such that the abuse of discretion standard is applicable in this case. (See Pls.' Resp. Gilbarco Defs.' Mot. Summ. J. at 9.)
Under this deferential standard, the Gilbarco Defendants' decision will not subject them to liability so long as it was reasonable, "even if [a] court would have come to a different conclusion independently." Ellis, 126 F.3d at 232 (citing Bruch, 489 U.S. at 115, 109 S.Ct. at 956-57); Haley v. Paul Revere Life Ins. Co., 77 F.3d 84, 89 (4th Cir.1996); Bernstein, 70 F.3d at 787. Even if Plaintiffs offer an interpretation of the plan that is more reasonable than that offered by the Gilbarco Defendants, this court is still bound to deny Plaintiffs' claims if the Gilbarco Defendants' interpretation was, in fact, reasonable. See de Nobel v. Vitro Corp., 885 F.2d 1180, 1188, 1190 (4th Cir.1989).
The Fourth Circuit has identified a series of factors that a court "may consider, but is not limited to" in determining whether a plan administrator's interpretation is reasonable:
(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.
Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir.2000) (citing de Nobel, 885 F.2d at 1188). If a review of these factors indicates that the plan administrator's decision to deny benefits was unreasonable under the terms of the plan, then the administrator will have abused its discretion; such an abuse warrants reversal of the administrator's decision. Bynum v. Cigna Healthcare of N.C., Inc., 287 F.3d 305, 312 (4th Cir.2002) (citing Booth, 201 F.3d at 342 (4th Cir.2000); see also Feder v. Paul Revere Life Ins. Co., 228 F.3d 518, 522 (4th Cir.2000)).
Each of Plaintiffs' three theories of liability depends on a determination of whether the Gilbarco Defendants' interpretation of the plan documents was reasonable.[8] The court will consider each in turn.
a. Retroactive Credit under the 1985 Restatement
With respect to their first theory of liability, Plaintiffs allege that, under the terms of the plan, they are entitled to credit dating from their completion of one year of service, accumulating until termination of their employment. Plaintiffs advance this argument in spite of the fact that, until July 1, 1984, the plan required employee contributions that Plaintiffs did not make.[9] Plaintiffs, however, argue that *600 credit should be granted retroactively from the date on which the contribution requirement was eliminated.
Plaintiffs' contention that they are entitled to retroactive credit hinges on the 1985 Restatement of the plan, which expressly stated that employee contributions would no longer be required effective July 1, 1984. That restatement of the plan provides that, "[a]n employee will be eligible for participation on the first day of the month coincident with or next following the date on which he or she completes one year of service and has earned pay for at least 750 hours." (Pls.' Resp. Gilbarco Defs.' Mot. Summ. J. Ex. 1 at 1 (emphasis added).) The plan goes on to provide that "[c]redited service will be given for any month in which a participant is eligible." (Id. (emphasis added).) Plaintiffs read these terms to say that they became participants entitled to credit once they were employed for one year, regardless of contributions. Plaintiffs base this interpretation on the absence of an express contribution requirement in the definition of "eligible for participation," a requirement that was set forth in prior restatements. (See id. Ex. 2 at 2.) Plaintiffs argue that the exclusion of any mention of the requirement in the 1985 Restatement definitions indicates that the requirement no longer applies, either prospectively or retroactively.
In denying Plaintiffs' claim for benefits, Defendants interpreted the 1985 Restatement to eliminate the contribution requirement only prospectively. Under that interpretation, Plaintiffs would begin to accumulate credit from July 1, 1984, when the contribution requirement was lifted, but would not be entitled to any credit for the period prior to that date in which they did not make the then-required contributions.
Having examined the language of the 1985 Restatement, the provisions of previous restatements, and the overarching purposes and goals of the plan, this court finds the Gilbarco Defendants' interpretation to be reasonable.[10]See Booth, 201 F.3d at 342-43. First, the 1985 Restatement distinguishes between "participants" and employees "eligible for participation." Under this restatement, employees become "eligible for participation" after one year of service, but credit is only given to "participants," not to those merely "eligible." (See Pls.' Resp. Gilbarco Defs.' Mot. Summ. J. Ex. 1 at 1.)
As Plaintiffs correctly note, the plan fails to state that an employee must make contributions before moving from "eligible" to "participant" status. That this omission should somehow generate retroactive credit for employees who previously failed to make contributions does not, however, follow from a comprehensive reading of the plan. Numerous provisions of the 1985 Restatement would be rendered irrelevant and nonsensical if, as Plaintiffs urge, the contribution requirement were removed retroactively. For example, several portions of the 1985 Restatement provide mechanisms to address the interests of contributing employees. (See Gilbarco Defs.' Answer Ex. B at 5-6.) Section 1.5(2) provides that vested participants may obtain a refund of their contributions upon termination of employment. If the refund is granted, these participants will *601 experience a reduction in their pension "to the extent the benefits were funded by the participant's contribution." (Id. at 6.) Under Plaintiffs' reading of the plan, these employees are entitled to full retroactive credit regardless of contribution, such that withdrawing their contributions should have no effect on their benefits. The 1985 Restatement, however, expressly states that withdrawing contributions would have the effect of decreasing a participant's pension. Decreasing a contributing participant's benefits in this way is consistent with the Gilbarco Defendants' interpretation of the plan, but creates an illogical result under Plaintiffs' reading. Accordingly, the Gilbarco Defendants' interpretation of the plan as removing the contribution requirement only prospectively was reasonable, and not an abuse of discretion. See Sargent v. Holland, 114 F.3d 33, 36 (4th Cir.1997) (finding administrator's interpretation was not an abuse of discretion when plaintiffs' proposed alternative would result in incongruent, "untenable" treatment of two types of employers under the plan).
Finally, Defendants' interpretation of the plan is consistent with restatements issued both prior to and following the 1985 Restatement. See Booth, 201 F.3d at 342-43 (noting that consistency among current and prior plan interpretations is a factor in determining whether current interpretation is reasonable).[11] For example, the 1985 Restatement's distinction between employees "eligible for participation" and "participants" is, as discussed above, retained from the 1983 Restatement. (See Gilbarco Defs.' Answer Exs. A at 1-2, B at 1.) It is consistent with the 1983 Restatement for the Gilbarco Defendants to conclude that, in the absence of any indication to the contrary, the terms retain their respective and different meanings. Were any difference between the two read out of the 1985 Restatement, as Plaintiffs urge, there would be no purpose in retaining the plan's continued use of these separate terms.
Further, both the 1985 and 1983 Restatements use the same method to determine pension amounts, basing the calculation on "participant ... years of plan participation." (See Gilbarco Defs.' Answer Exs. A at 10, B at 9.) Under Plaintiffs' proposed interpretation, the 1985 Restatement should not continue to base its calculation on years of "participation," but should instead adopt a calculation based on years of employment. Again, the 1985 Restatement's retention of a calculation based on "participation," which previously required contributions in addition to service as an employee, signals that the calculation was designed to account for past years in which employees were not necessarily participants. Such phrasing would be unnecessary if, under Plaintiffs' reading, all employees were retroactively granted full credit for all prior years of employment. The retention of a "participation"-based calculation indicates that the Gilbarco Defendants acted reasonably in interpreting the 1985 Restatement to remove the contribution requirement only prospectively, but not retroactively.
Additionally, all later restatements of the plan continue to distinguish between employees who became participants by contributing prior to July 1, 1984, and those who became participants after that *602 date simply by virtue of completing one year's employment. (Gilbarco Defs.' Answer Exs. C at 16, 17, D at 8, 21.) These restatements make clear that employees in the latter category did not receive retroactive credit when the contribution requirement was eliminated. (See id. Ex. C at 9 ("Service during any period in which an employee was not a participant because he did not make required contributions to the plan shall not count as benefit service."); accord id. Ex. D at 22.) Rather, it is clear that these employees accumulated no credit during the time in which they did not make the required contributions. This outcome is in keeping with the Gilbarco Defendants' interpretation of the 1985 Restatement.
The Gilbarco Defendants' interpretation of the plan is consistent with the definition and calculation provisions found in both the 1985 and 1983 Restatements,[12] as well as later restatements' separate treatment of employees who became participants by contributing and employees who became participants after the contribution requirement was lifted. Were the court to adopt Plaintiffs' reading of the plan, many of its provisions and long-established interpretations of them would be totally undone. Cf. Sargent, 114 F.3d at 36 ("[C]ourts should not lightly overturn twenty-two years of clear, consistent, and settled plan interpretation.").
Despite these provisions, Plaintiffs urge that the Gilbarco Defendants' interpretation leads to an inequitable result. Plaintiffs point to the treatment of employees who came to work for Gilbarco as the result of mergers and similar corporate acquisitions. Plaintiffs assert that several of these employees were awarded retroactive credit under the plan even though they did not make the requisite contributions prior to July 1, 1984. Plaintiffs concede, however, that prior to merging with Gilbarco the employees in question were subject to plans that did not require contributions. Had the Gilbarco Defendants not honored their participant status following the mergers, they would have violated ERISA, which mandates that an employer may not reduce an employee's benefit credit. See 29 U.S.C. § 1054(g); Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1146-48 (3d Cir.1993). The employees joining Gilbarco as a result of mergers did not, in fact, receive retroactive credit; they merely retained credit to which they were entitled under their former plans. The Gilbarco Defendants' decision to preserve these employees' previously-accumulated credit, as ERISA requires, but to decline Plaintiffs' claim for retroactive credit is neither inequitable nor unreasonable. See Booth, 201 F.3d at 342-43 (stating that whether the administrator's decision was consistent with the procedural and substantive requirements of ERISA is a factor to be considered in determining reasonableness).
Since the Gilbarco Defendants' interpretation of the plan provisions was reasonable, Plaintiffs are foreclosed from further arguing that the 1985 Restatement allowed for retroactive credit under the plan. Accordingly, the Gilbarco Defendants' motion for judgment on the pleadings as to Counts I and II of the Second Amended Complaint will be granted to the extent these Counts rely on Plaintiffs' argument regarding retroactive credit. The Gilbarco Defendants' motion is granted in full as to Plaintiff Hartsell's claims under Counts I and II since he advances no other theory of liability under these Counts.
*603 b. Double Credit for Employment Service Overseas
As to their second theory of liability, Plaintiffs Colin and Prewitt argue that they were wrongfully denied double credit under the plan for years in which they served overseas. Both parties agree that the plan restatements now in evidence do not provide for such credit. Rather, Colin and Prewitt assert that they were shown other documents, allegedly entitled either "Temporary Overseas Assignment" or "Regular Overseas Assignment," which were purported to supplement the terms of the plan. Colin and Prewitt allege that these supplemental documents provided two years of credited service for every year of work overseas.
It is well-settled that oral representations and writings outside the terms of an ERISA plan will only be considered as amendments if they were adopted pursuant to the protocol expressly set forth in the plan itself. White v. Provident Life & Accident Ins. Co., 114 F.3d 26, 28 (4th Cir.1997) (holding that separate insurance policy could not alter the ERISA plan in question because "ERISA demands adherence to the clear language of [the] employee benefit plan"); HealthSouth Rehab. Hosp. v. American Nat'l Red Cross, 101 F.3d 1005, 1009 (4th Cir.1996); Biggers v. Wittek Indus., Inc., 4 F.3d 291, 295 (4th Cir.1993) ("Oral or informal written amendments are inadequate to alter the written terms of a plan, as this practice would undermine certainty."); see also Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 58-59 (4th Cir.1992) ("[A]ny modification to a plan must be implemented in conformity with the formal amendment procedures and must be in writing. Oral or informal written modifications to a plan ... are of no effect."). The question for this court is, therefore, whether the supplemental documents were adopted as amendments pursuant to the plan's protocol.[13]
Consulting the relevant sections of the 1983 and 1985 Restatements reveals only that "[t]he Plan may be amended by the Company at any time." (Gilbarco Defs.' Answer Exs. A at 22, B at 25.)[14] It is unclear what actions, if any, could be considered taken "by the Company." Colin and Prewitt assert that employees of Gilbarco represented that the supplemental documents in question were part of the plan. The court is without evidence from which to determine whether the plan could be considered amended by such action. Under ordinary corporate law principles, only the board of directors or authorized officers would have the authority to make decisions or representations that were binding on the corporation. In this case, however, neither party has provided any argument or evidence to support or detract from the proposition that the employees in question may have held authority to officially amend the plan. See Duplex Envelope Co. v. Denominational Envelope Co., 80 F.2d 179, 182 (4th Cir.1935) (noting that, although a corporation's secretary-treasurer would not, simply by virtue of his office, have authority to bind a corporation to a contract, the corporation could grant him such authority and would then *604 be bound by his acts). Without such evidence, a question remains as to whether the supplemental documents at issue were actually adopted as part of the plan; accordingly, judgment in favor of the Gilbarco Defendants would be inappropriate at this stage of the proceedings. See Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 250-52 (4th Cir.1967) (denying summary judgment when evidence did not clearly establish whether employee that committed malfeasance held requisite authority to bind corporation by his acts).
Further, neither party has provided a copy of the supplemental documents in question. Assuming the documents did amend the plan, the court is presently unable to determine whether the Gilbarco Defendants interpreted the terms reasonably in denying Colin and Prewitt the benefits they seek. Upon proceeding to discovery, Colin and Prewitt may be able to demonstrate that the documents were adopted "by the Company" pursuant to the plan, and that the documents do provide double credit for overseas service.[15] Since judgment on the pleadings is inappropriate unless a plaintiff can prove no set of facts that would entitle him to relief, this court will deny the Gilbarco Defendants' motion to dismiss Counts I and II of the Second Amended Complaint. Plaintiffs Colin and Prewitt may continue to pursue both Counts on the theory that the supplemental documents became part of the plan, and that the Gilbarco Defendants' decision to deny benefits stemming from double credit earned during years of overseas service was based on an unreasonable interpretation of the plan.
c. Calculation of "Credited Service" and "Basic Compensation"
Plaintiffs' third theory of liability, based on their allegation that Colin's years of "credited service" and "basic compensation" were miscalculated, is likewise based on the reasonableness of the Gilbarco Defendants' interpretation of the plan. Colin argues that his years of credited service were miscalculated because years in which he did not make the required employee contributions were excluded. (See Gilbarco Defs.' Answer Ex. G at 7.) Although he concedes that he failed to make these contributions, he asserts that he is entitled to retroactive credit under the 1985 Restatement. (See id.) As discussed above, the Gilbarco Defendants were reasonable in their interpretation of the 1985 Restatement and did not abuse their discretion in declining to calculate Colin's years of "credited service" in a way that would grant him retroactive credit.
As to "basic compensation," Colin argues that calculation should be based on "a final average salary" derived from the "highest successive 36 months" of pay, as reflected on his W-2 forms. (See id.) The Gilbarco Defendants instead calculated "basic compensation" as "the basic monthly salary rate of a participant established by the employer exclusive of bonuses, commissions, premium pay, expense allowances and all other forms of additional compensation." (See id. at 8, 13.) This definition is taken directly from the 1985 *605 Restatement, which was in place at the time Colin's employment ended. Since the Gilbarco Defendants interpreted the terms of the plan in a way that exactly followed the express definition of "basic compensation," their denial of Colin's request for reinterpretation was reasonable and not an abuse of discretion. Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir.2000) (stating that whether an administrator followed the language of the plan and did so in a "reasoned and disciplined" fashion are factors to consider in determining the reasonableness of the interpretation).
Since the Gilbarco Defendants were reasonable in their interpretation of Colin's years of "credited service" and "basic compensation," there has been no abuse of discretion. Accordingly, the Gilbarco Defendants' motion for judgment on the pleadings will be granted as to Colin's arguments regarding the meaning of these terms.
In summation, the court has concluded that the first and third of Plaintiffs' three theories of liability, both of which were based on interpretations of the 1985 Restatement, will now be foreclosed. Counts I and II will survive the Gilbarco Defendants' motion based on Plaintiffs' second theory of liability. That theory, advanced only by Plaintiffs Colin and Prewitt, is dependent upon their demonstration that supplemental documents were adopted as part of the plan, and that those documents should have been interpreted to grant them double credit during overseas service.
C. Count IV  Claims Pursuant to § 104(b)(1)(B) of ERISA
Plaintiffs allege that Defendants failed to provide them with copies of summary plan descriptions, including relevant modifications and changes, within 210 days of the end of the plan year as required by § 104(b)(1)(B) of ERISA. Specifically, Plaintiffs assert that Defendants failed to provide a summary of material modifications and a new summary plan description following the Marconi USA Plan's spin off to the Marconi Commerce Plan. As a remedy for these alleged violations, Plaintiffs seek only "an injunction and order requiring the Marconi Commerce Committee to adhere to its statutory disclosure obligations." (Pls.' Resp. Gilbarco Defs.' Mot. Summ. J. at 18.)
Plaintiffs have not, however, expressly asserted any harm they have suffered as a result of Defendants' alleged failure to provide these documents.[16] Beneficiaries cannot recover on claims under ERISA's notice provisions absent a showing that they were harmed as a result of the notice failure. Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 238 (4th Cir.1997) (affirming grant of summary judgment on the plaintiff's claim regarding defects in her notice of benefit denial, and stating that "there must be a causal connection between these defects and the final denial of a claim"); Pierce v. Security Trust Life Ins. Co., 979 F.2d 23, 30 (4th Cir.1992) (stating that "case law establishes that a plan participant `must show reliance and prejudice in order to recover for an employer's failure to comply with ERISA's *606 statutory requirements,'" and noting that even a total failure to notify will not give rise to an ERISA claim where no harm is shown) (quoting Govoni v. Bricklayers, Masons & Plasterers Int'l Union of Am., Local No. 5 Pension Fund, 732 F.2d 250, 252 (1st Cir.1984)).
Since Plaintiffs have not alleged that Defendants' failure to comply with ERISA's notice requirements actually harmed them, they cannot recover on their claim under § 104(b)(1)(B). For this reason, the court will grant Marconi USA Committee's motion to dismiss[17] and the Gilbarco Defendants' motion for judgment on the pleadings as to Count IV of the Second Amended Complaint.
D. CountV  Claims Pursuant to § 209 of ERISA
Plaintiffs allege that Marconi USA Committee failed to maintain records regarding Plaintiffs' employment and benefits in violation of § 209 of ERISA. See 29 U.S.C. § 1059. Marconi USA Committee has moved to dismiss this claim, contending that § 209 does not provide a private right of action. The Gilbarco Defendants have moved for judgment on the pleadings as to this claim on the same grounds.
Some courts have directly held that § 209 does not create a private right of action, but instead allows a $10 civil penalty to be paid to the Secretary of Labor.[18]See Lowe v. Telesat Cablevision, Inc., 837 F.Supp. 410, 412 (M.D.Fla.1993) (granting motion to dismiss claim under § 209 for failure to state a claim because no private right of action exists under that provision); Cartelli v. Plumbers & Steamfitters Local Union No. 422 Pension Fund, No. 89 C 6783, 1991 WL 150039, at *3 (N.D.Ill. Jul.31, 1991) (granting motion for summary judgment on same grounds), adhered to on recons. by 1992 WL 6065, at *2 (Jan. 9, 1992). Rather, courts have held that § 209 affects evidentiary burdens such that, when a plaintiff demonstrates the defendant's failure to comply with § 209, the burden of proving the accuracy of employment or benefit records shifts to the defendant. See, e.g., Brick Masons Pension Trust v. Industrial Fence & Supply, Inc., 839 F.2d 1333, 1337-38 (9th Cir.1988); Combs v. King, 764 F.2d 818, 825-26 (11th Cir.1985).
This court likewise holds that § 209 does not create a private right of action, but instead operates only to influence evidentiary burdens. Accordingly, the court will grant both Marconi USA Committee's motion to dismiss and the Gilbarco Defendants' motion for judgment on the pleadings as to Count V of the Second Amended Complaint.
E. Count VI  Claims for Breach of Fiduciary Duty
1. Gilbarco Defendants' Motion to Dismiss Count VI
Plaintiffs Colin and Prewitt[19] claim that various employees and agents of *607 Gilbarco breached their fiduciary duties under ERISA. Prior to Plaintiffs' filing their Second Amended Complaint, the Gilbarco Defendants moved to dismiss this claim as raised in the First Amended Complaint for failure to plead with the particularity required under Federal Rule of Civil Procedure 9(b). The Gilbarco Defendants noted Plaintiffs' intent to file a second amended complaint and requested the motion be directed to that document, "[i]nasmuch as the pleading inadequacies of the first amended complaint persist in the proposed second amended complaint."[20] (Reply Mem. Supp. Gilbarco Defs.' Mot. Dismiss at 1 n. 1.)
The court finds that the pleading inadequacies of which the Gilbarco Defendants complained do not persist in the Second Amended Complaint. Colin and Prewitt allege the specific nature of the representations, the general time and location at which they were made, and the identity of the Gilbarco employees implicated. (Second Am. Compl. ¶¶ 31-36, 44-49.) These allegations are sufficient to meet the pleading requirements imposed by Rule 9(b). See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir.1999) (noting that "the `circumstances' required to be pled with particularity under Rule 9(b) are `the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby'" (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1297, at 590 (2d ed.1990))); Gilbert v. Bagley, 492 F.Supp. 714, 725 (M.D.N.C.1980) (stating that Rule 9(b) "does not contradict the theory of notice pleading embraced by the Federal Rules in general, and Rule 8, in particular"). Since Colin and Prewitt stated their claim for breach of fiduciary duty with sufficient particularity, the Gilbarco Defendants' motion to dismiss Count VI of the Second Amended Complaint will be denied.
2. Marconi USA Committee's Motion to Dismiss and Gilbarco Defendants' Motion for Judgment on the Pleadings as to Count VI
Plaintiffs Colin and Prewitt allege that various Gilbarco employees made material misrepresentations regarding the plan, thereby breaching Gilbarco's fiduciary duties. The alleged misconduct, if proven, could create liability for Gilbarco.[21] Plaintiffs do not, however, assert any misconduct with regard to Count VI by any Defendant other than Gilbarco. Despite this result, the Second Amended Complaint appears to assert this claim against all Defendants. To the extent Plaintiffs may be pursuing this claim against any Defendants other than Gilbarco, they have failed to state a claim upon which relief may be granted because the Second Amended Complaint is devoid of any supporting allegations. Accordingly, Count VI of the Second Amended Complaint will be dismissed with respect to Marconi USA Committee, the Marconi Commerce Plan, Marconi *608 Commerce Committee, the Danaher Plan, and Danaher.
As to the claims for breach of fiduciary duty against Gilbarco, two bases of liability are asserted. First, both Colin and Prewitt claim they were shown documents separate from the plan and were told these documents were part of the plan. These documents are, as discussed above, alleged to have provided double credit to Gilbarco employees during years of service overseas. Although Colin and Prewitt both served overseas, neither actually received double credit. Second, Colin claims that a Gilbarco employee misrepresented to him that he would not vest in the plan until age 65. Colin actually vested at age 62, but, as he alleges, did not make a claim for benefits until age 65 in reliance on the Gilbarco employee's misrepresentation. The court will first discuss whether Colin and Prewitt are entitled to pursue the first theory of liability pursuant to § 502(a)(3), and will next consider whether the two theories advanced state a viable claim.
a. Availability of Remedy Pursuant to § 502(a)(3) of ERISA
Colin and Prewitt assert that Gilbarco employees showed them supplemental documents that allowed double credit for employment overseas. As discussed above, Colin and Prewitt seek to prove that these documents actually were part of the plan such that two years of service should have been credited to them for every year of overseas employment. In the event Colin and Prewitt are able to demonstrate that the supplemental documents were part of the plan, they may recover on their claims made pursuant to § 502(a)(1) of ERISA under Counts I or II.[22]
If Colin and Prewitt cannot prove that the supplemental documents were part of the plan, they assert in the alternative that the Gilbarco employees' misrepresentations constitute a breach of Gilbarco's fiduciary duty. If proven, this claim would be remedied pursuant to § 502(a)(3) which, unlike § 502(a)(1), allows "appropriate equitable remedies" that Colin and Prewitt would not otherwise be entitled to under the terms of the plan. Compare Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 384-85 (4th Cir.2001) (holding that plaintiff could pursue remedies under § 502(a)(3) when plan did not actually entitle him to a benefit defendants previously represented he would receive), with Blair v. Young Phillips Corp., 235 F.Supp.2d 465, 472 (M.D.N.C.2002) (holding that plaintiff could not pursue fiduciary duty claim under § 502(a)(3) when "claim [was] clearly one for benefits" that plaintiff was entitled to under his plan and could pursue via § 502(a)(1)).
Defendants argue that Colin and Prewitt are not entitled to bring a § 502(a)(3) claim, since a remedy pursuant to § 502(a)(1) is available to them. Defendants are correct in asserting that a claim pursuant to § 502(a)(3) may not be pursued if a remedy is available via § 502(a)(1). See, e.g., Varity Corp. v. Howe, 516 U.S. 489, 515, 116 S.Ct. 1065, 1079, 134 L.Ed.2d 130 (1996) (stating that relief under § 502(a)(3) is only "appropriate" if adequate redress is not available to the beneficiary via other ERISA provisions such as § 502(a)(1)); Hoyle v. Liberty Life Assurance Co. of Boston Inc., BTR, 291 F.Supp.2d 414, 417 (W.D.N.C.2003) (collecting cases). This assertion is true, however, only if the claims are advanced simultaneously. Colin and Prewitt are advancing their claims as alternative bases for liability. If the supplemental documents *609 were part of the terms of the plan entitling Colin and Prewitt to benefits, and they were subsequently denied those benefits, then they may pursue remedies pursuant to § 501(a)(1). If, in the alternative, the documents were not part of the plan, then Colin and Prewitt were misled by the Gilbarco employees who indicated otherwise; such a misrepresentation may constitute a breach of Gilbarco's fiduciary duty and entitle Colin and Prewitt to relief pursuant to § 501(a)(3). See Griggs, 237 F.3d at 384-85. Although the claims must, at some point, prove mutually exclusive, Colin and Prewitt may advance both as alternative bases for liability.
b. Bases for Gilbarco's Liability under § 502(a)(3) of ERISA
Having determined that it is proper to pursue a claim under § 502(a)(3) at this stage of the proceedings, the court must now consider whether Colin and Prewitt's allegations state such a claim as a matter of law. While Colin and Prewitt together allege they were misled regarding the supplemental documents pertaining to overseas service credit, Colin alone alleges that he was misled regarding his vesting age under the plan. The former allegation, shared by both Colin and Prewitt, is based on both oral and written representations, see Second Am. Compl. ¶¶ 31, 44-45, while the latter allegation is based only on oral representations. (See id. ¶ 34.)
Although, as Gilbarco notes, informal documents and oral statements are wholly inadequate to modify the terms of an ERISA plan, see, e.g., Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 59 (4th Cir.1992); HealthSouth Rehab. Hosp. v. American Nat'l Red Cross, 101 F.3d 1005, 1009 (4th Cir.1996), Colin and Prewitt are not claiming, for purposes of their § 502(a)(3) claims, that the representations actually modified the plan. Colin and Prewitt assert that the representations regarding double credit, if not part of the plan, were made with the intent to induce their overseas service. (Second Am. Compl. ¶¶ 31-33, 44-47.) Colin asserts that the representations regarding his vesting age misled him as to the terms of the plan and induced him not to make a valid claim for benefits for three years. (Id. ¶¶ 34, 38-39.)
Both allegations are based on misrepresentations of the terms of the plan, and assert that such statements constitute a breach of fiduciary duty. "[A] fiduciary's responsibility ... encompasses more than merely a duty to refrain from intentionally misleading a beneficiary. ERISA administrators have a fiduciary obligation `not to misinform employees through material misrepresentations and incomplete, inconsistent or contradictory disclosures.' ... Moreover, a fiduciary is at times obligated to affirmatively provide information to the beneficiary." Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 380 (4th Cir.2001) (quoting Harte v. Bethlehem Steel Corp., 214 F.3d 446, 452 (3d Cir.2000)).
In Griggs, the Fourth Circuit considered a situation analogous to the instant case. In both cases, the beneficiaries' claims "focus[ ] primarily on a fiduciary's duty to communicate complete and accurate information ... and to refrain from misleading the beneficiary with respect to material facts." Id. at 381. In Griggs, the beneficiary contended that the employer "provided him with information that it knew was material to his decision to accept" a particular type of benefit distribution upon retirement; thereafter, the beneficiary failed to receive the tax-deferred payment he was promised. Id. Likewise, Colin and Prewitt assert that the promise of double plan credit induced their decision to work overseas, see Second Am. Compl. ¶¶ 31-33, 45-48, and Colin asserts the representations *610 regarding his vesting age caused his failure to make a valid claim for benefits for three years. (See id. ¶¶ 34, 40.) As was the case in Griggs, Colin and Prewitt are entitled to assert claims for breach of fiduciary duty pursuant to § 502(a)(3) on grounds that Gilbarco misrepresented terms of the plan, either intentionally or inadvertently, and failed to correct those misstatements upon discovery. See Griggs, 237 F.3d at 381 (finding that breach of fiduciary duty occurred and was actionable under § 502(a)(3) when employer misrepresented terms of the plan and failed to notify beneficiary of inaccuracies once discovered).
As such, oral and informal written misrepresentations regarding the terms of a plan are actionable under § 502(a)(3). See Jones v. American Gen. Life & Accident Ins. Co., 370 F.3d 1065, 1071-74 (11th Cir.2004); Griggs, 237 F.3d at 381; In re Unisys Corp. Retiree Med. Benefit ERISA Litig., 57 F.3d 1255, 1265-69 (3d Cir.1995) (finding that participants in an ERISA-governed plan stated a claim for breach of fiduciary duty under § 502(a)(3) based on allegations that the plan administrator gave vague and incorrect answers concerning the terms of their plan); Drennan v. General Motors Corp., 977 F.2d 246, 251 (6th Cir.1992) ("Misleading communications to plan participants regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for a breach of fiduciary duty."). The factual allegations Colin and Prewitt advance, if proven, would certainly demonstrate an actionable breach of Gilbarco's fiduciary duties. Since inherent questions of fact exist regarding the nature of the alleged misrepresentations, their materiality, and whether they actually occurred, the court declines to grant Gilbarco's motion for judgment on the pleadings with regard to Colin and Prewitt's claims under Count VI of the Second Amended Complaint.[23]
III. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AS TO COUNT III OF PLAINTIFFS' SECOND AMENDED COMPLAINT
Plaintiffs claim that Defendants Marconi USA Committee, Marconi Commerce Committee, and Danaher[24] violated § 104(b)(4) of ERISA by failing to provide certain documents related to the plan. Pursuant to § 502(c)(1)(B), Plaintiffs seek statutory penalties of $110 per day for each day Defendants failed to provide these documents. Marconi USA Committee and the Gilbarco Defendants have separately moved for summary judgment on this claim.
Summary judgment is appropriate when an examination of all proper discovery materials before the court demonstrates that there is no genuine issue of material fact, thus entitling the moving party to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the non-moving party is to prevail, there must be more than just a factual dispute; the fact in question must be material and the dispute must be genuine. See Fed R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. *611 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
Although the court must view the facts in the light most favorable to the nonmovant when considering a motion for summary judgment, see Anderson, 477 U.S. at 255, 106 S.Ct. at 2513, the award of civil penalties under § 502(c)(1)(B) is wholly within the court's discretion. See Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1148 (3d Cir.1993); Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc., 637 F.2d 357, 362 (5th Cir.1981). Section 502(c)(1)(B) provides:
Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day [increased to $110 per day by 29 C.F.R. § 2575.502c-1] from the date of such failure or refusal....
29 U.S.C. § 1132(c)(1) (emphasis added). Accordingly, liability under this subsection will not attach unless the beneficiary in question first made a request for information. Likewise, the section under which Plaintiffs assert their claim, § 104(b)(4), provides:
The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.
29 U.S.C. § 1024(b)(4) (emphasis added). As such, to prove Defendants' noncompliance with these provisions, Plaintiffs must first demonstrate that a written request for information was made. Plaintiffs have only made that showing with respect to Hartsell, who, on May 2, 2000, made a written request for numerous plan documents. Plaintiffs do not allege or argue that either Colin or Prewitt made any written request for information.[25] That Defendants cannot locate any such requests, despite their regular business practice of maintaining copies of participant and beneficiary correspondence, can be considered evidence that no such request was made. See Fed.R.Evid. 803(7); In re Apex Express Corp., 190 F.3d 624, 635 (4th Cir.1999) (finding the absence of business records to be evidence of the non-existence of such records).
Having been presented with no evidence or allegation to the contrary, the court concludes that Colin and Prewitt did not make a written request for information. Since § 104(b)(4) and § 502(c)(1)(B) both require an affirmative request for information before imposing a duty to respond or statutory penalties, the absence of such request entitles Defendants to judgment as a matter of law. See Kleinhans v. Lisle Sav. Profit Sharing Trust, 810 F.2d 618, 622 (7th Cir.1987); Welsh v. GTE Serv. Corp., 866 F.Supp. 1420, 1425 (N.D.Ga.1994), aff'd, 61 F.3d 32 (11th Cir.1995); Hozier v. Midwest Fasteners, Inc., *612 908 F.2d 1155, 1167 (3d Cir.1990). As a result, the court will grant Defendants' motions for summary judgment as to the claims advanced under Count III of the Second Amended Complaint by Plaintiffs Colin and Prewitt.
Turning to Hartsell's written request for information, the evidence demonstrates that he sought copies of the latest versions, and all prior versions produced since 1967, of (1) plan summary descriptions, (2) plan restatements, (3) plan trust documents, (4) summaries of material plan modifications, and (5) any "204(h) Notice" issued. (See Marconi USA Comm. Mem. Supp. Mot. Summ. J. Ex. 1 at 1.) In response to his inquiry, Defendants sent Hartsell "all plan documents for the Marconi USA Plan and predecessor plans ... the latest summary plan descriptions ("SPDs") ... and all previous SPDs known to exist for the Marconi USA Plan and its predecessor plans ... all annuity contracts ... [and] all relevant trust documents." (Id. at 5; see also id. Exs. 2-3.) These documents accounted for more than 1,400 pages of information. (Kramer Aff. ¶¶ 9, 12.)
Despite his receipt of these documents, Hartsell claims Defendants violated § 104(b)(4) by failing to produce "the 1984 amendment to the Gilbarco Plan regarding participant contributions, the summary plan description applicable to the 1985 Gilbarco Restatement, as well as all summary plan descriptions between 1979 and 1991." (Second Am. Compl. ¶ 24.) In fact, § 104(b)(4) only requires plan administrators to "furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4) (emphasis added).
Amongst the numerous other documents provided, Defendants sent Hartsell the latest updated summary plan description and all relevant trust documents. The other items specifically required to be provided under § 104(b)(4) are the latest annual report, terminal reports, and bargaining agreements. Hartsell does not dispute that he made no request for these items. As such, Defendants complied in transmitting the plan description and trust documents that were both requested by Hartsell and expressly required to be sent under § 104(b)(4).
Section 104(b)(4) also requires, however, that Defendants provide "other instruments under which the plan is established or operated." See id. Hartsell argues that this provision entitles him to the items he now seeks: the 1984 plan amendment, the summary plan description applicable to the 1985 Restatement, and all summary plan descriptions between 1979 and 1991. This argument, however, ignores case law dictating that the penalty provisions of § 502(c)(1)(B) are to be strictly construed. See Faircloth v. Lundy Packing Co., 91 F.3d 648, 653-54 (4th Cir.1996) (rejecting appellants' argument "that § 104(b)(4) should be construed broadly to encompass any documents that would assist participants and beneficiaries in determining their rights under a plan," and noting that "if Congress had intended § 104(b)(4) to encompass all documents that provide information about the plan and benefits, Congress could have used language to that effect"); Hughes Salaried Retirees Action Comm. v. Administrator of the Hughes Non-Bargaining Ret. Plan, 72 F.3d 686, 691 (9th Cir.1995) (en banc); Fisher v. Metropolitan Life Ins. Co., 895 F.2d 1073, 1077 (5th Cir.1990). In Faircloth, the Fourth Circuit considered the "other instruments" language of § 104(b)(4) and found that "[t]he clear and unambiguous meaning of this statutory language encompasses only formal or legal *613 documents under which a plan is set up or managed." 91 F.3d at 654.
Under this standard, § 104(b)(4) certainly does not require Defendants to provide Hartsell with a series of outdated plan descriptions. Cf. Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan, 188 F.3d 895, 903 (7th Cir.1999) ("[O]utdated plan descriptions do not fall into any of the categories of documents a plan administrator must provide to plan participants under section 1024(b)(4)."); Leung v. Skidmore, Owings & Merrill LLP, 213 F.Supp.2d 1097, 1104 (N.D.Cal.2002) ("Had Congress desired that section 1024(b)(4) provide for disclosure of outdated documents, it would have been easy to adopt statutory language to that effect."). Section 104(b)(4) also does not encompass Hartsell's request for the summary plan description applicable to the 1985 Restatement. Summary plan descriptions are a statutorily established means of informing participants of the basic terms of their plan and benefits. See 29 U.S.C. § 1022. By contrast, plan instruments are the documents required to actually establish and maintain a plan. See id. § 1102. Under the Fourth Circuit's reading, summary plan descriptions are not "formal or legal documents under which a plan is set up or managed" and are, therefore, not required to be produced to a participant upon a § 104(b)(4) request. See Faircloth, 91 F.3d at 654.
Finally, as to Hartsell's request for the 1984 plan amendment, Defendants vigorously deny that any such document exists. Hartsell has presented no evidence to the contrary. Rather, he argues that such a document should exist and, if it does not, one should be created. (See Pls.' Resp. Mot. Summ. J. at 10.) This assertion, standing alone, is insufficient to demonstrate that Defendants should be charged civil penalties under § 502(c)(1)(B).
The court cannot award civil penalties to Hartsell stemming from Defendants' failure to produce a document that does not exist. Defendants are also not required to produce the other documents Hartsell requested, the outdated summary plan descriptions and the 1985 Restatement plan description, under a strict reading of § 104(b)(4). Further, the award of civil penalties under § 502(c)(1)(B) in conjunction with a violation of § 104(b)(4) is wholly within the court's discretion. See Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1148 (3d Cir.1993); Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc., 637 F.2d 357, 362 (5th Cir.1981). Since Defendants complied with the requirements of § 104(b)(4), and exceeded their obligation by providing more than 1,400 pages of documentation in response to Hartsell's request, the court finds no cause to award Hartsell any civil penalties. Accordingly, Defendants' motions for summary judgment as to Hartsell's claim under Count III of the Second Amended Complaint will be granted.
IV. CONCLUSION
For the reasons stated herein,
IT IS ORDERED that the Gilbarco Defendants' Motion to Dismiss Count VI [10-1] is DENIED.
IT IS FURTHER ORDERED that Marconi USA Committee's Motion to Dismiss Counts I, II, IV, V, and VI[46], the Marconi USA Committee's Motion for Summary Judgment as to Count III[45], and the Gilbarco Defendants' Motion for Summary Judgment as to Count III[42] are GRANTED.
IT IS FURTHER ORDERED that the Gilbarco Defendants' Motion for Judgment on the Pleadings as to Counts I, II, IV, V, and VI[37] is DENIED in part and GRANTED in part. As to Counts I and II, the Gilbarco Defendants' motion is *614 GRANTED to the extent these Counts are based on Plaintiffs' claims regarding interpretation of the 1985 Restatement. The motion is DENIED to the extent Counts I and II are based on Plaintiffs Colin and Prewitt's claims regarding supplemental plan documents conferring double overseas credit. As to Counts IV and V, the Gilbarco Defendants' motion is GRANTED. As to Count VI, the Gilbarco Defendants' motion is DENIED.
Remaining in this case are Plaintiffs Colin and Prewitt's claims for remedies pursuant to § 502(a)(1) of ERISA regarding whether they are due double credit for overseas service. These claims remain, however, only as asserted against the Gilbarco Defendants in Counts I and II of the Second Amended Complaint. Additionally remaining, and asserted in the alternative to their § 502(a)(1) claims, are Plaintiffs Colin and Prewitt's claims for breach of fiduciary duty regarding double overseas credit. The remedies sought under these claims are pursued via § 502(a)(3) and remain only as asserted against Gilbarco in Count VI of the Second Amended Complaint. As discussed herein, the § 502(a)(1) and § 502(a)(3) claims are based on mutually exclusive theories of liability; Colin and Prewitt may succeed, if at all, under only one of these two provisions. Finally, Colin's claim for remedies pursuant to § 502(a)(3) and based on representations regarding his vesting age remains only as asserted against Gilbarco in Count VI of the Second Amended Complaint.
Earlier motions made by Defendants were filed prior to and have been rendered moot by Plaintiffs' filing of the Second Amended Complaint: The Gilbarco Defendants' Motion for a More Definite Statement [10-2], Marconi USA Committee's Motion to Dismiss Plaintiffs' First Amended Complaint [14], and Marconi USA Committee's Motion for Summary Judgment as to Count III of Plaintiffs' First Amended Complaint [16].
NOTES
[1] In considering all motions currently before it, the court must construe the facts in the light most favorable to Plaintiffs. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); Randall v. United States, 30 F.3d 518, 522 (4th Cir.1994).
[2] The term "spun off," as used by the parties, is meant to indicate that assets and liabilities of one plan were transferred to and assumed by a subsequent plan.
[3] Counsel for Marconi USA Committee previously filed a motion to dismiss Plaintiffs' First Amended Complaint; that motion is also pending before this court. At that time, counsel also filed a brief in support of the motion. Plaintiffs, with leave of the court, later filed their Second Amended Complaint, adding a new "Count IV" and, therefore, renumbering the previous Counts IV and V to Counts V and VI, respectively. Counsel responded by again moving to dismiss. Rather than filing a new brief in support of that motion, counsel instead refiled the same brief that accompanied its previous motion to dismiss, and filed a separate brief directed solely at the new Count IV. Counsel apparently finds it reasonable to expect the court to decipher its twice-filed brief which, not having been updated to reflect changes to the complaint, reads "amended complaint" when it means "second amended complaint," "Count IV" when it means "Count V," and "Count V" when it means "Count VI." That expectation is neither reasonable nor conducive to judicial economy. Further, counsel now has three briefs in support of its current motion before this court, two addressing Counts I, II, V, and VI (though neither brief acknowledges the renumbering) and one addressing Count IV. The court cannot disregard the original brief, though duplicative of the second, because it includes an exhibit not attached to the refiled brief. Counsel is advised that, in future cases before this court, the proper course would be to withdraw the original and now superceded motion, file a new motion and brief actually directed to the appropriate pleading, and combine all relevant evidence as attachments to that single document.
[4] Counsel for Marconi USA Committee also moved for summary judgment as to Count III of the First Amended Complaint and, when renewing its motion as to the Second Amended Complaint, simply refiled the original brief. Though the filings are otherwise duplicative, the court must reference both since counsel did not refile the original attachments, a practice that is discouraged. See note 3, supra.
[5] Plaintiffs have stipulated that the relevant provisions of the spin-off agreement are valid. (See Pls.' Facts & Stipulation at 2.) The agreement expressly states that liabilities under the Marconi USA Plan associated with individuals whose most recent termination of employment occurred prior to December 31, 2001, were transferred to and accepted by the Marconi Commerce Plan. (See Br. Supp. Marconi USA Comm. Mot. Dismiss Ex. 9 at 2.) Since Plaintiffs each ended their employment with Gilbarco or Marconi Systems, Inc. prior to December 31, 2001, see Second Am. Compl. ¶¶ 3-5, all liabilities related to their claims are encompassed by the spin-off agreement.
[6] Marconi USA Committee cannot be liable on this basis with respect to Plaintiff Prewitt because he was denied benefits after his plan was spun off to Marconi Commerce Committee.
[7] It is relevant to note that not all of the Gilbarco Defendants can have authority to administer the plan. Since the parties do not differentiate between these Defendants in discussing potential liability for improper interpretation, the court must continue to address these Defendants as a group.
[8] To the extent these claims hinge solely on plan interpretation, rather than on disputed questions of fact, they are properly decided at this stage of the proceedings. Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir.2001).
[9] Plaintiffs Colin, Prewitt, and Hartsell each became employees eligible to make contributions between 1968 and 1977. Hartsell apparently began making contributions to the plan in January 1982; it is not clear whether Plaintiffs Colin and Prewitt ever contributed.
[10] Since the validity of the plan restatements is not in dispute, these documents are properly considered at this stage of the proceedings. See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir.1999); Jones v. GE Life & Annuity Assurance Co., No. 1:03CV241, 2004 WL 691749, at *1 n. 4 (M.D.N.C. Mar 17, 2004).
[11] Plaintiffs argue that the Gilbarco Defendants should not look to prior restatements of the plan in order to interpret the 1985 Restatement. (See Pls.' Resp. Gilbarco Defs.' Mot. Summ. J. at 4-5.) This argument overlooks Fourth Circuit opinions that expressly include consistent plan interpretation over time as a factor which indicates reasonable interpretation by the plan administrator. See, e.g., Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir.2000).
[12] Earlier-dated plan restatements were not provided by the parties, but it is not disputed that employee contributions were required for participation from as early as 1967 until the requirement was eliminated on July 1, 1984.
[13] The court also notes that, under certain circumstances, documents extraneous to the plan may be binding as additional terms if these documents can be considered "informal plans." See Elmore v. Cone Mills Corp., 23 F.3d 855, 861-62 (4th Cir.1994). Since the parties have presented no evidence or argument on this point, the court is unable to determine whether the supplemental documents at issue could be considered informal benefit plans setting forth binding terms.
[14] Later restatements of the plan provide that amendments must be made by resolution of the employer's Board of Directors. (See, e.g., Gilbarco Defs.' Answer Ex. C at 43, 48.)
[15] To that end, Plaintiffs provide the declaration of Martin Markowitz, a former vice president of Human Resources for Gilbarco. The declaration is meant to support Plaintiffs' contentions regarding the contents of the supplemental documents, but, absent a showing that some exception to the best evidence rule applies, see Fed.R.Evid. 1001-1004, cannot serve as a substitute for the actual documents. Though not competent evidence to be considered at this point, the declaration does support this court's conclusion that an unresolved issue remains regarding the existence of these documents, their effect on the plan, and their specific provisions.
[16] A review of the spin-off agreement, which Plaintiffs concede is valid and binding, reveals that the only change with respect to Plaintiffs was the assignment of assets and liabilities formerly under the Marconi USA Plan to the Marconi Commerce Plan. (See Mem. Supp. Marconi USA Comm. Mot. Dismiss Ex. 9.) This change would not cause the harm Plaintiffs allege in their Second Amended Complaint, such as the allegation that Defendants never provided a document to correct their misrepresentation that Colin and Prewitt would receive double credit for overseas service. Rather, each of the injuries alleged in the Second Amended Complaint are raised in direct association with Plaintiffs' claims under Counts I, II, and VI.
[17] The court also notes that Marconi USA Committee cannot be held liable on this claim because it is no longer a plan administrator such that it is unable, as discussed above, to provide Plaintiffs any redress. See, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).
[18] Section 209 requires an employer to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a). This section further provides that, if the employer "fails to comply with such requirement, he shall pay to the Secretary [of Labor] a civil penalty of $10 for each employee with respect to whom such failure occurs, unless it is shown that such failure is due to reasonable cause." Id. § 1059(b).
[19] Plaintiff Hartsell does not advance claims under Count VI.
[20] The Gilbarco Defendants have since filed an answer to Plaintiffs' Second Amended Complaint. Accordingly, Defendants' motion to dismiss pursuant to Rule 12(b)(6) is properly treated as a motion for judgment on the pleadings pursuant to Rule 12(c). Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir.2002). Since the standard of review is the same for both motions, see id., the court will consider the arguments put forth in the Gilbarco Defendants' motion to dismiss.
[21] The court notes that employers are not necessarily plan fiduciaries under ERISA. See, e.g., Tatum v. R.J. Reynolds Tobacco Co., 294 F.Supp.2d 776, 782 (M.D.N.C.2003). Since Gilbarco has not disputed that it is a plan fiduciary, the court will not pursue this issue.
[22] As set forth herein, to succeed on this claim, Colin and Prewitt would have to demonstrate that the supplemental documents can be considered informal plans or formally adopted amendments to the plan.
[23] Gilbarco advances several arguments regarding the propriety of the remedies Colin and Prewitt seek pursuant to Count VI. The court declines to consider such arguments at this time, but will instead revisit the issue when and if Colin and Prewitt are meritorious on their claims.
[24] Although the Second Amended Complaint appears to assert this claim against all Defendants, Plaintiffs state in their responsive brief to Defendants' motions for summary judgment that they are alleging the claim only against the plan administrators.
[25] Despite Plaintiffs' failure to allege any written request by Colin or Prewitt, Defendants admit that Colin made one request for the documents used to calculate his "final monthly compensation." (Kramer Aff. ¶ 19.) However, this request regards Defendants' obligation to maintain records sufficient to determine benefits. This obligation arises from § 209, not § 104(b)(4), and does not, as discussed above, give rise to a private cause of action. See, e.g., Lowe v. Telesat Cablevision, Inc., 837 F.Supp. 410, 412 (M.D.Fla.1993).